Sutliff, J.
It is claimed, on behalf of the plaintiff in this case, that, by force of the statutes relating to the recording of mortgages, in this State, the record of the mortgage of Mary Sanders can not be regarded as constructive notice to Owens, at the time of the execution of the mortgage to him, and of its being recorded.
It is provided by the act for the proof, acknowledgment and recording of deeds, and other instruments of writing passed February 22, 1831, as follows :
Seo. 1. “ That when any man or unmarried woman, above the age of twenty-one years, shall execute, within this State, any deed, mortgage, or other instrument of writing, by which any land, tenement, or hereditament, shall be conveyed or otherwise affected or incumbered in law, such deed, mortgage,” etc., shall be executed as thereby directed.
Sec. 7. “That all mortgages executed agreeably to the provisions of this act shall be recorded in the office of the recorder of the county in which such mortgaged premises are situated, and shall take effect from the time when the same are recorded,” etc.
The question then arises, Was the mortgage executed to Mary Sanders and recorded on the 23d April, 1849, to be regarded on the 14th of July, 1854, when Owens received his mortgage, as a mortgage within the meaning of the provisions of section 7 of the statute?
It is argued, from these two provisions of our statute, that the mortgage contemplated by section 7 must be one by which the land is “affected or incumbered in law;” and that inasmuch as David A. Sanders, at the time of executing the *493 mortgage to Mary Sanders, had Only an equitable title to the land, the land was neither affected nor incumbered thereby.
If it be true that the first mortgage deed was not included by the words “ deed, mortgage, or other instrument of writing, by which any land, tenement or hereditament shall be conveyed or otherwise affected or incumbered in law,” which are each and all authorized to be recorded, the recording of the instrument would not, by force of the statute, be constructive notice of its existence.
But, on the other hand, if the first mortgage,, at the time of the execution of the subsequent mortgage to Owens, was a mortgage or instrument of writing, by which the land was “ affected or incumbered in law,” it was such a mortgage as expressed in section 7, and, as is thereby provided, “ shall be recorded; ” and the record thereof, in such case, would necessarily be constructive notice of the same, to the subsequent mortgagee, Owens, at the time of the execution of the mortgage to him.
Let us, then, recur to the facts of the case, to ascertain the true character and legal effect of the mortgage to Mary Sanders. Was it an instrument by which the land, on the 14th day of July, 1854, was “ affected or incumbered in law ? ”
The instrument is in the usual form of a deed, conveying the land to the grantee, Mary Sanders, in fee. simple, with the usual covenants of warranty by the grantor, David A. Sanders, subject only to the condition of defeasance, that the same should become void upon the grantor’s paying to the grantee the sum of six hundred dollars, evidenced by his note of that date, payable one year from the date thereof, and dated January 24, 1849. It is true that at the time of executing this deed, David A., the grantor, though in the possession of said land, was not then vested with the fee simple title. He had only the legal possessory title, or right of possession in presentí, and the further equitable title, or right of the fee simple title, in futuro, upon paying the remainder of the purchase money. The grantor, however, by the terms of his deed, assumed to convey the land in fee simple, and expressly covenanted that the said grantee, her heirs and assigns *494 forever, should hold the same free from all incumbrances, and that the title so conveyed was “ clear, free and unincumbered, and that he will warrant and defend the same against all claims whatsoever.” In January, 1850, when the note had be - come due and remained unpaid, what then was the effect of this deed upon the land, as between the parties ? Certainly the same, in law, as' if there had been no condition expressed therein. The condition upon which it was to become void, not having been complied with, was gone at law, and the deed of conveyance had become absolute; and, as between the parties, the same was, in law, just as operative as if, at its execution the grantor had been, in fact, vested with a title in fee simple.
In an action of ejectment, the proof of the execution of the deed would have entitled the grantee to a judgment for possession of the lands against the grantor; and under such judgment she could have taken actual possession, and have succeeded to the right and enjoyment of the premises as fully as possessed by him at that time.
But the precise time to which we should have respect to determine the character of the first mortgage, is that of the execution of the second mortgage. The real question is, was the mortgage of Mary Sanders, on the 14th day of July, 1854, when Owens was about to take his mortgage on the same land, a deed, mortgage, or instrument by which the land was then conveyed, affected or incumbered in law? And this question, like the former, is to be answered by reference to the parties to the first mortgage, and its subject matter, the land, and at the time immediately preceding the execution of Owens’ mortgage., Was or was not the title of David A. then affected by his mortgage executed in January, 1849, to Mary Sanders ? On the 22d day of May, 1851, David A. received a conveyance in fee simple of this land, which he had already conveyed in fee simple by deed of warranty to Mary Sanders. Both .those deeds, as between the parties, were in full force previous to Owens’ receiving his mortgage. How then stood the title ? Applying the familiar principle that a grantor with warranty is es-topped by his grant from setting up against his grantee, any after acquired title to the lands granted or conveyed, by the *495 language of his prior deed, and as between these parties, Mary Sanders might, by virtue of her prior deed, in law claim and hold the lands in fee simple. Bond’s lessee v. Swearingen, 1 Ohio Rep. 395. See also the case of Lessee of Allen v. Parish, 3 Ohio Rep., to the same effect. In which case Burnett, J., pronouncing the opinion, says: “By the uniform course of decisions, both English and American, the grantor was estopped, by his deed, from setting up a title under the patent; neither could his heirs, nor any person claiming under him, question the title of the grantee on the ground that the patent was subsequent in date to the deed.”
It is, therefore, evident by the test insisted upon, that not only was the first mortgage an instrument executed in the form and manner prescribed by sec. 1. of the act to convey or incumber lands, but it was an instrument of writing by which the land had in fact and law, been conveyed and affected, as between the only parties having any title, interest, or estate in the land, at the time of Owens so receiving his mortgage. The first mortgage was, therefore, at that time, a proper instrument to be recorded, and required to be so recorded, by said section 7, of the statute, to give it effect. Its record was, therefore, even if not constructive notice to strangers, all that the statute required to give the first mortgage at that time full operative effect, as between the parties.
This is not a case where the question of priority of equities between a former and subsequent mortgage, depends upon notice, either actual or constructive, on the part of the second mortgagee. Such a question might have arisen, if the latter mortgagee had derived title immediately from Keck & Clements. But such is not the case; Owens received his mortgage from David A. Sanders, who had already executed his conveyance by warranty deed, more than five years before, to Mary Sanders ; and had himself acquired a perfect legal title about three years previous to making his mortgage to Owens. This title so then acquired by David A. inured to his former grantee, making as between himself and his future grantees, or heirs, and her, the title of Mary Sanders as perfect as if he had held a perfect title in fee simple at the time he so *496 executed to her the said mortgage. Such was the situation of the title of David A., and such the character of the title of Mary Sanders, on the 14th day of July 1854.
What title, then, did David A. Sanders at that date con • vey by his deed to John W. Owens ? It is obvious that he could not convey any greater title than he then held ; whatever language he may have used in the deed, could no more enlarge the title, than the quantity of the land, beyond that which he actually held. But we have seen that by his former conveyance and subsequent receipt of title, and the doctrine of estoppel applying to the case, full force and effect in law had already been given to his former deed to Mary Sanders, And the force and effect of the estoppel is, in law, just as binding upon a subsequent grantee as it is upon the grantor; and upon either it is equally obligatory with the language of the deed creating the first grant, or conveyance. An obligation of estoppel binds not only the grantor in such a case, but his heirs and subsequent grantees, and all persons privy to him. It adheres to the land, and is transmitted with the estate, whether the same passes by descent or purchase. And the estoppel becomes, and forever after remains, a muniment of the title so acquired; and when the party so estopped conveys the land, he necessarily conveys it subject to such estoppel in the hands of his grantee.
It follows, therefore, from this view of the case, that independent of the question of notice, the mortgage of Mary Sanders is as obligatory upon Owens, the grantee, as it was upon his and her grantor, David A., at the time of the execution of such second mortgage; and its obligation as a mortgage upon the grantor, David A., is not questioned, and certainly cannot be.
A majority of the court are clearly of opinion that full effect should be given to the mortgage to Mary Sanders, and that hers is, in law and equity, the prior lien upon the proceeds of the sale of the- lands.

Judgment entered accordingly.

Scott, Peck and Brinkerhoee JJ., concurred.
Gholson, J. dissented.